

KC FILED
DEC 05 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAFRAN LLC, <br><br> Plaintiff, <br><br> v. <br><br> SAFRAN S.A. and SAFRAN U.S.A., INC. <br><br> Defendants. | Civil Action No. _____ <br><br> **Jury Trial Demanded** <br><br> **07CV6847** <br> **JUDGE GETTLEMAN** <br> **MAGISTRATE JUDGE COX** |

## COMPLAINT

Plaintiff Safran LLC ("SAFRAN") for its Complaint against defendants Safran S.A. d/b/a The Safran Group ("SAFRAN-FRANCE") and Safran U.S.A., Inc. ("SAFRAN-USA") (collectively "SAFRAN GROUP") seeking damages, injunctive relief and other relief for infringement of Safran's intellectual property, alleges as follows:

### PARTIES

1. SAFRAN is an Illinois limited liability company with its principal place of business at 225 West Huron Street, Suite 213, Chicago, Illinois 60610.

2. On information and belief, SAFRAN-FRANCE is a French company with its principal place of business at Boulevard du Général Martial Valin, Paris Cedex 15, France 75724.

3. On information and belief, SAFRAN-USA is a United States corporation with its principal place of business at 2300 Clarendon Bd., Suite 600A, Arlington, Virginia 22201.

### JURISDICTION AND VENUE

4. This Court has jurisdiction over SAFRAN's claims under 28 U.S.C. §§ 1331 and 1338(a) and 15 U.S.C. §1121.

5.  This Court has personal jurisdiction over SAFRAN GROUP because its members individually, collectively and/or through an alter ego, have transacted and are transacting business in this District, and have made, used, offered for sale, or sold services using marks that infringe SAFRAN's trademarks in this judicial district.

6.  Venue properly lies in this Court under 28 U.S.C. §§ 1391(b) and (c) because SAFRAN GROUP is subject to personal jurisdiction and has committed acts of trademark infringement in this District.

## THE SAFRAN BUSINESS

7.  SAFRAN was founded in 1998 in Chicago by renown French national and designer, Jean-Laurent Vilon.

8.  SAFRAN is a brand consulting agency that assists American and European businesses in the design of their brand. As such, SAFRAN develops and implements branding strategies, web sites and web software.

9.  After almost a decade of existence, SAFRAN has established a reputation as one of the leading brand consulting agencies.

## SAFRAN'S TRADEMARK

10.  When SAFRAN was created in 1998, it was originally named jlvdesign.com.

11.  In 2002, SAFRAN began investing significant time and resources in the re-development of its own brand.

12.  Mr. Vilon and his team searched for a mark with positive connotations that would be easily and equally memorized and pronounced by the pool of clients of the agency: generally members of the French and American communities.

13. Through its efforts, SAFRAN developed a list of potential names, which were in turn submitted via the Internet to a focus group of a hundred of American and French individuals.

14. The name "SAFRAN," both with and without design elements, was ultimately selected (the "SAFRAN Mark") as a result of this focus group study. The SAFRAN Mark was developed at great expense, effort and time by SAFRAN.

## SAFRAN GROUP'S UNLAWFUL ACTS

15. Upon information and belief, two French companies, the Snecma Group and SAGEM SA, merged in 2005 to become a unified company.

16. Upon information and belief, this unified company announced its intention to adopt and use the SAFRAN Mark and to be named the SAFRAN GROUP in March 2005.

17. Upon discovering the SAFRAN GROUP's intention to adopt and use the SAFRAN Mark, SAFRAN contacted the SAFRAN GROUP about the pre-existing use of the SAFRAN Mark by SAFRAN and the likelihood of confusion that the adoption of the same name and design by the SAFRAN GROUP would create.

18. Upon information and belief, the SAFRAN GROUP disregarded SAFRAN's concerns and was officially named the SAFRAN GROUP.

19. As soon as the SAFRAN GROUP adopted its name, the company initiated an active branding and promotional campaign in the Chicago area.

20. In particular, SAFRAN GROUP joined the Chicago chapter of the French-American Chamber of Commerce (the "FACC"), one of the primary business organizations of the Community. SAFRAN has been a member of the FACC since 2004.

21. In the weeks that immediately followed the adoption and promotion by the SAFRAN GROUP of its new company and mark, SAFRAN's clients and contacts expressed confusion as to the relation existing between the two companies.

22. On information and belief, at times pertinent hereto, SAFRAN-FRANCE and SAFRAN-USA engaged in behavior that continually blurred the lines of the independent corporate forms routinely maintained by parent and subsidiary companies, and acted as one entity rather than two separate entities. On further information and belief, at times pertinent hereto, SAFRAN-USA was the alter ego of SAFRAN-FRANCE and/or SAFRAN-FRANCE used its subsidiary for a misleading, improper, unjust, fraudulent, or illegal purpose, and as an agent, instrumentality, adjunct or alter ego to shield this improper conduct, and as such, their corporate veils may be pierced. Specifically, SAFRAN-FRANCE used SAFRAN-USA to improperly benefit from the use of SAFRAN's intellectual property. On information and belief, SAFRAN-FRANCE took part in controlling the day-to-day operations of SAFRAN-USA and is thus liable for the injuries and damages to SAFRAN.

23. On May 5, 2005, SAFRAN's counsel sent a cease and desist letter to the SAFRAN GROUP informing the SAFRAN GROUP of damaging instances of actual consumer confusion. SAFRAN GROUP nevertheless failed to cease using the mark.

24. Upon information and belief, SAFRAN GROUP, acting in concert, utilizes the SAFRAN Mark on its website, www.safran-group.com, as well as in its advertising and other marketing materials.

25. Upon information and belief, one or more of the Defendants acting alone or in concert misappropriated SAFRAN's intellectual property.

26. Upon information and belief, one or more of the Defendants acting alone or in concert knowingly and willfully misappropriated SAFRAN's intellectual property.

27. By misappropriating SAFRAN's intellectual property, SAFRAN GROUP has been and continues to make false designations of origin and/ or false or misleading descriptions or representations of fact which are likely to cause confusion, mistake or to deceive or have already caused confusion, mistake and deception as to SAFRAN GROUP's affiliation, connection or association with SAFRAN.

## ACTUAL CONSUMER CONFUSION

28. Since SAFRAN GROUP began utilizing the SAFRAN Mark, instances of actual confusion have occurred.

29. For instance, in 2003, SAFRAN was hired by Hyatt International Corporation ("Hyatt International") to develop and launch a new branding system. SAFRAN was designated "Preferred Vendor" for branding design by Hyatt International. This meant that each time that a Hyatt Hotel located in the United States planned on updating its branding, SAFRAN was the first company to be contacted. Being the Preferred Vendor of the hotel chain for branding design offered a significant source of business and revenues for SAFRAN.

30. In September 2005, SAFRAN was contacted by Hyatt International and was informed that Hyatt International was reluctant to use a branding agency that was affiliated with an aeronautic company. SAFRAN's founder, Mr. Vilon, tried to explain that there was no such affiliation, connection or association between SAFRAN and the SAFRAN GROUP. Nevertheless, Hyatt International concluded that it could no longer entrust SAFRAN with the branding of Hyatt International since SAFRAN was being confused with SAFRAN GROUP.

31. On April 28, 2006, SAFRAN sponsored the "Nuit des Etoiles," the annual gala of the French-American Chamber of Commerce. Approximately 180 persons attended. SAFRAN contributed a significant amount of time, money and effort to the gala: it designed the theme of the evening and had the 2000 invitations printed. In addition, a film and a slide show produced by SAFRAN were projected during the event.

32. Representatives of the SAFRAN GROUP attended the gala, including one of SAFRAN GROUP's top executives, Eric Bachelet.

33. The majority of the guests who met Mr. Vilon for the first time that night associated him with the SAFRAN GROUP, wrongfully assuming that the branding agency was merely one of the numerous activities of the aeronautic group. As a result, the SAFRAN GROUP was perceived by many as the actual sponsor of the event and SAFRAN's sponsorship efforts wrongfully enured to the benefit of the SAFRAN GROUP.

34. Following the April 2006 event, SAFRAN has repeatedly been contacted, both formally and informally, by members of the community regarding the affiliation of SAFRAN with the SAFRAN GROUP.

35. In July of 2006, the French Embassy Trade Commission organized an event to promote French business in the Midwest region: "Michigan Avenue Goes French." One of the exhibitors was the SAFRAN GROUP. This time, the group shortened its name to "SAFRAN," thereby further increasing the likelihood of confusion with the established branding agency.

36. In February 2007, SAFRAN was contacted by Aviation Week & Space Technology magazine. The magazine was offering to sell advertisement and articles to SAFRAN. The communication was clearly intended for SAFRAN GROUP.

37.     In November 2007, a conference organized by the International Trade Counselors and the French Trade Commissions, CAP EXPORT, welcomed 100 small and medium size companies in Miami to initiate the French managers to the characteristics of the United States market and encourage them to export in the country. Each company was paired with a trade counselor from the French Trade Commission network. Trade counselors ("CCEF") are French nationals living abroad who are appointed by the French Prime Minister in recognition of the success of their business activities in a foreign country. The role of CCEFs is to advise French small- and medium-size companies on the legal, operational or cultural aspects of export strategies.

38.     As a result of the success of SAFRAN in the United States, its Chief Executive Officer, Mr. Vilon, was appointed trade counselor by the French Prime Minister in 2005.

39.     CAP EXPORT should have been the opportunity for Mr. Vilon to not only guide these French companies, but also strengthen the exposure of the SAFRAN brand among these potential clients. In reality, the vast majority of the prospects met during the conference assumed that Mr. Vilon's company, SAFRAN, was a subsidiary of SAFRAN GROUP.

40.     Upon information and belief, SAFRAN GROUP's misappropriation of SAFRAN's intellectual property has caused mistake, confusion and deception, resulting in lost business opportunities as well as diminishment of credibility for the branding design agency.

## COUNT I

### Federal Unfair Competition

41.     SAFRAN realleges and incorporates by reference the allegations in Paragraphs 1 through 40 of its Complaint.

42. SAFRAN GROUP has made false designations of origin and false or misleading descriptions or representations of fact which are likely to cause confusion, to cause mistake and to deceive as to SAFRAN GROUP's affiliation, connection or association with SAFRAN in violation of 15 U.S.C. § 1125(a).

43. SAFRAN GROUP's acts are likely to cause confusion, to cause mistake or to deceive the public as to the source of SAFRAN GROUP's services, or as to a possible affiliation with or sponsorship by SAFRAN in violation of 15 U.S.C. § 1125(a).

44. SAFRAN GROUP has violated, and upon information and belief, intends to continue to willfully, knowingly and intentionally violate 15 U.S.C. § 1125(a) by its unlawful acts in a manner that is likely to cause confusion, mistake or deceive as to the affiliation, origin, sponsorship of SAFRAN's services.

45. SAFRAN GROUP's conduct has caused SAFRAN to suffer irreparable harm and, unless enjoined by the Court, will cause SAFRAN to continue to suffer damage to its operation, reputation, and goodwill, and will suffer the loss of sales and profits that SAFRAN would have made but for SAFRAN GROUP's acts. SAFRAN GROUP has been, and will continue to be, unjustly enriched by its unlawful acts.

46. SAFRAN has no adequate remedy at law. SAFRAN GROUP's conduct has caused and, if not enjoined, will continue to cause irreparable damage to SAFRAN. As a result of SAFRAN GROUP's wrongful conduct, SAFRAN is entitled to injunctive relief.

## COUNT II

### Infringement of U.S. Trademark Reg. No. 3,102,697

47. SAFRAN realleges and incorporates by reference the allegations in Paragraphs 1 through 46 of its Complaint.

48.     Upon information and belief, SAFRAN GROUP adopted its name with knowledge of Reg. No. 3,102,697.

49.     SAFRAN GROUP deceptively used, and continues to use, confusingly similar marks to Reg. No. 3,102,697, which has caused actual confusion, mistake and deception as to SAFRAN GROUP's affiliation, connection or association with SAFRAN.

50.     SAFRAN GROUP deceptively used, and continues to use, confusingly similar marks to Reg. No. 3,102,697, which is likely to cause confusion, to cause mistake and to deceive as to SAFRAN GROUP's affiliation, connection or association with SAFRAN.

51.     SAFRAN GROUP's acts are calculated to deceive, or are likely to deceive, the channels of trade who recognize and associate Reg. No. 3,102,697 with SAFRAN. Moreover, this conduct is likely to cause confusion, to cause mistake or to deceive the public as to the source of SAFRAN's services or as to a possible affiliation with or sponsorship by SAFRAN.

52.     SAFRAN GROUP's acts constitute willful trademark infringement under 15 U.S.C. § 1114.

53.     SAFRAN GROUP's conduct has caused SAFRAN to suffer and, unless enjoined by the Court, will cause SAFRAN to suffer damage to its operation, reputation and goodwill. SAFRAN GROUP has been, and will continue to be, unjustly enriched by its unlawful acts.

54.     SAFRAN has no adequate remedy at law. SAFRAN GROUP's conduct has caused and, if not enjoined, will continue to cause irreparable damage to SAFRAN. As a result of SAFRAN GROUP 's wrongful conduct, SAFRAN is entitled to injunctive relief.

## COUNT III

### Common Law Trademark Infringement

55. SAFRAN realleges and incorporates by reference the allegations in Paragraphs 1 through 54 of its Complaint.

56. Upon information and belief, SAFRAN GROUP adopted its name with knowledge of the SAFRAN Mark.

57. SAFRAN GROUP deceptively used, and continues to use, confusingly similar marks to SAFRAN Mark, which has caused actual confusion, mistake and deception as to SAFRAN GROUP's affiliation, connection or association with SAFRAN.

58. SAFRAN GROUP deceptively used, and continues to use, confusingly similar marks to SAFRAN Mark, which is likely to cause confusion, to cause mistake and to deceive as to SAFRAN GROUP's affiliation, connection or association with SAFRAN.

59. SAFRAN GROUP's acts are calculated to deceive, or are likely to deceive, the channels of trade who recognize and associate SAFRAN Mark with SAFRAN. Moreover, this conduct is likely to cause confusion, to cause mistake or to deceive the public as to the source of SAFRAN's services or as to a possible affiliation with or sponsorship by SAFRAN.

60. SAFRAN GROUP's acts constitute trademark infringement under state and federal common laws.

61. SAFRAN GROUP's conduct has caused SAFRAN to suffer and, unless enjoined by the Court, will cause SAFRAN to suffer damage to its operation, reputation and goodwill. SAFRAN GROUP has been, and will continue to be, unjustly enriched by its unlawful acts.

62. SAFRAN has no adequate remedy at law. SAFRAN GROUP's conduct has caused and, if not enjoined, will continue to cause irreparable damage to SAFRAN. As a result of SAFRAN GROUP's wrongful conduct, SAFRAN is entitled to injunctive relief.

## COUNT IV

### Common Law Unfair Competition

63. SAFRAN realleges and incorporates by reference the allegations in Paragraphs 1 through 62 of its Complaint.

64. SAFRAN GROUP's acts constitute unfair competition under common law.

65. SAFRAN GROUP's infringement of the SAFRAN Mark and Reg. No. 3,102,697 has caused, and is causing, irreparable harm to SAFRAN. Unless this Court enjoins SAFRAN GROUP from continuing its unauthorized use of the SAFRAN Mark and Reg. No. 3,102,697, SAFRAN will continue to suffer irreparable harm.

## COUNT V

### Illinois Deceptive Trade Practices Act

66. SAFRAN realleges and incorporates by reference the allegations in Paragraphs 1 through 65 of its Complaint.

67. The foregoing acts of SAFRAN GROUP constitute a violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510 et seq.

68. SAFRAN GROUP's conduct has caused SAFRAN to suffer and, unless enjoined by the Court, will cause SAFRAN to continue to suffer damage to its operation, reputation, and goodwill.

69.     SAFRAN has no adequate remedy at law. SAFRAN GROUP's conduct has caused and, if not enjoined, will continue to cause irreparable damage to SAFRAN. As a result of SAFRAN GROUP's wrongful conduct, SAFRAN is entitled to injunctive relief.

## RELIEF REQUESTED

WHEREFORE, SAFRAN requests that the Court enter a judgment in SAFRAN's favor and against SAFRAN GROUP and provide SAFRAN the following relief:

A.      Order, adjudge, and decree that SAFRAN GROUP has infringed the SAFRAN Mark and Reg. No. 3,102,697 under 15 U.S.C. §§ 1114 and 1125(a);

B.      Order, adjudge, and decree that SAFRAN GROUP willfully and knowingly infringed the SAFRAN mark and Reg. No. 3,102,697;

C.      Issue preliminary and permanent injunctive relief prohibiting SAFRAN GROUP and its respective parents, subsidiaries, principals, officers, agents, affiliates, servants, attorneys, employees and all others in privity with it from using any mark which is likely to be confused with the SAFRAN Mark and Reg. No. 3,102,697;

D.      Order SAFRAN GROUP to identify and recall from customers and destroy all infringing materials, including but not limited to all packaging and advertising incorporating the infringing mark or any other mark confusingly similar to the SAFRAN Mark and/ or Reg. No. 3,102,697;

E.      Award SAFRAN three times its damages to compensate SAFRAN under 15 U.S.C. § 1117;

F.      Award SAFRAN its reasonable attorneys' fees under 15 U.S.C. § 1117;

G. Order, adjudge and decree that SAFRAN GROUP willfully and knowingly made false or misleading descriptions or representations of fact as to SAFRAN GROUP's affiliation, connection or association with SAFRAN;

H. Issue preliminary and permanent injunctive relief prohibiting SAFRAN GROUP and its respective parents, subsidiaries, principals, officers, agents, affiliates, servants, attorneys, employees and all others in privity with it from making false or misleading descriptions or representations of fact as to SAFRAN GROUP's affiliation, connection or association with SAFRAN; and

I. Award such other and further relief as the Court may deem just.

Dated:   December 5, 2007

Respectfully submitted,

SAFRAN LLC

_____
One of its Attorneys

S. Patrick McKey
Jeana R. Lervick
BELL, BOYD & LLOYD LLP
70 West Madison Street
Suite 3100
Chicago, Illinois 60602
(312) 372-1121
(312) 827-8000 (fax)